```
 1                     UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3

 4    UNITED STATES OF AMERICA      .   4:09-CR-00453(5)

 5    VERSUS                        .   HOUSTON, TEXAS

 6    ANDRE MCDANIELS               .   SEPTEMBER 13, 2012

 7    . . . . . . . . . . . . . .       1:30 P.M.

 8

 9                    TRANSCRIPT OF REARRAIGNMENT
                 BEFORE THE HONORABLE LYNN N. HUGHES
10                   UNITED STATES DISTRICT JUDGE

11                            APPEARANCES

12
      FOR THE GOVERNMENT:
13
          Sherri Zack
14        Assistant United States Attorney
          1000 Louisiana
15        Suite 2300
          Houston, Texas  77002
16
      FOR THE DEFENDANT:
17
          Nathan Mays
18        Attorney at Law
          402 Main Street, Suite 300N
19        Houston, Texas  77002

20
      OFFICIAL COURT REPORTER:
21
          Mayra Malone, CSR, RMR, CRR
22        U.S. Courthouse
          515 Rusk, Room 8004
23        Houston, Texas  77002

24    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
25
```

```
1                          P R O C E E D I N G S
2              THE COURT:   The United States of America versus Andre
3   McDaniels.
4              MS. ZACK:   Good afternoon, Your Honor.  Sherri Zack on
5   behalf of the United States.
6              MR. MAYS:   Nathan Mays on behalf of Andre McDaniels,
7   Your Honor.
8              THE COURT:   Would you raise your right hand, please,
9   sir?
10     (Defendant sworn)
11             THE COURT:   Please keep your voice up.  Tell me your
12  full name.
13             THE DEFENDANT:   Andre Boyd McDaniels.
14             THE COURT:   How old are you, Mr. McDaniels?
15             THE DEFENDANT:   I'm 42.
16             THE COURT:   How much education have you had?
17             THE DEFENDANT:   I have got my GED and some college.
18             THE COURT:   And of what country are you a citizen?
19             THE DEFENDANT:   The United States.
20             THE COURT:   I ask everybody because I have to warn
21  people who are foreigners about the consequences of their
22  immigration status.  The only way to do it is to do it to
23  everybody.
24                 Are you under the care of a psychologist or a
25  physician?
```

1   *THE DEFENDANT:*  No, sir.

2   *THE COURT:*  Were you using drugs or alcohol before you
3   were arrested?

4   *THE DEFENDANT:*  No, sir.

5   *THE COURT:*  Are you sure?

6   *THE DEFENDANT:*  I mean, I have used drugs in my past,
7   but when they arrested me --

8   *THE COURT:*  No.  But, say, for six months before you
9   were arrested, were you drinking or using drugs?

10  *THE DEFENDANT:*  Yes, sir.

11  *THE COURT:*  Are you having any mental or physical
12  problems because you are not now using drugs or alcohol?

13  *THE DEFENDANT:*  No, sir.

14  *THE COURT:*  How do you feel today?

15  *THE DEFENDANT:*  Very nervous.

16  *THE COURT:*  I can explain that.  You would be crazy
17  not to nervous when you are surrounded by lawyers.

18          Speaking of lawyers, have you had time to discuss
19  your case with Mr. Mays?

20  *THE DEFENDANT:*  Yes, sir.

21  *THE COURT:*  Are you happy with the work he has done
22  for you?

23  *THE DEFENDANT:*  Yes, sir.

24  *THE COURT:*  And have you read the indictment and all
25  the stuff it says in there?

1      THE DEFENDANT:  Yes, I have read the document.
2      THE COURT:  How do you plead to Counts 1, 3, 7 and 8?
3      THE DEFENDANT:  Guilty.
4      THE COURT:  Mr. McDaniels, under the Constitution, you
5  have a right to a trial by jury on these charges.  At that
6  trial, you would be considered innocent.  You would never have
7  to prove that you are innocent.  The government would have to
8  prove beyond a reasonable doubt that you actually did what it
9  has accused you of doing.  They would have to bring witnesses
10 in to court to testify in front of you about what you had done.
11             At the trial, Mr. Mays could try to block the
12 government's evidence by objecting.  He can ask questions of
13 the government's witnesses for your side of the story.  He can
14 bring other witnesses to present your side of the story, if
15 there are any.
16             At the trial, you could testify if you wanted to.
17 If you chose not to testify, no one could make you testify and
18 no one could use it against you if you had not testified.
19             If you plead guilty, there will be no witnesses,
20 no exhibits, no jury or trial.  You have pled guilty and we
21 will go ahead with the punishment.  Also, you are going to have
22 to testify against yourself some because I'm going to ask you
23 about what you did to make sure that you are pleading guilty
24 because you really did these four crimes.
25             Having gone over these rights with you, do you

1  still want to plead guilty?
2          THE DEFENDANT:  Yes, sir.
3          THE COURT:  The first crime is the conspiracy, that is
4  just a fancy legal word for an agreement, and the agreement is
5  to do the stuff in the other counts.
6          Isn't that right, Ms. Zack?
7          MS. ZACK:  Yes, Your Honor, among other things, yes.
8          THE COURT:  So it is basically the leftovers all put
9  in a file, and it says you agreed to do this, so I'm going to
10 come back to that one.
11         MS. ZACK:  Your Honor, if Your Honor is referring to
12 the sentence data sheet, I just noticed a typo, but the plea
13 agreement has it correctly.
14         On Count 7, it shows that the penalty is a term
15 of imprisonment up to 10 years and a fine of $250,000.  It is
16 actually up to 20 years, and the plea agreement correctly
17 reflects that.  And I know that Mr. --
18         THE COURT:  So do I, assuming I can read my
19 handwriting.
20         MS. ZACK:  I apologize for that, Your Honor.
21         THE COURT:  That's all right.
22         Counts 3 and 8 are that you transported -- that's
23 very prissy -- but you drove, carried, arranged transportation
24 for somebody in interstate commerce and that you intended that
25 the person you were moving around engage in prostitution, or

1  any other sex crime.  Okay.  Those are the elements of that
2  one.  Do you understand?
3         *THE DEFENDANT:*  Yes.
4         *THE COURT:*  And the punishment for that is up to 10
5  years in prison and a quarter of a million dollar fine.
6              Now, Count 7 is that you --
7         *MS. ZACK:*  Your Honor, I'm sorry.  That is also
8  backwards.  Counts 3 and 7 are transportation, 8 is coercion
9  and enticement.
10        *THE COURT:*  You know two mistakes in the sentence is
11 20 percent off.
12        *MR. MAYS:*  We will take it.
13        *MS. ZACK:*  I retyped this so many times I'm not even
14 sure at this point what day it is.  I think we have got it now.
15        *THE COURT:*  Mr. McDaniels, the numbers are not what
16 count.  You have got two transporting charges, one coercion and
17 one conspiracy.  We can give them letters or names of states,
18 whatever you want to do.  Obviously she can't keep the numbers
19 straight.  The guts is you have got two transportation charges,
20 one enticing, and enticing means you persuaded, convinced,
21 asked -- they have about nine synonyms in here, but you
22 recruited somebody into the commercial sex business that was
23 illegal.
24              Do you understand?
25        *THE DEFENDANT:*  Yes, sir.

1   THE COURT:  Any questions about the elements of that
2   one?
3       THE DEFENDANT:  No, sir.
4       THE COURT:  And that's the 20 to life -- I mean up to
5   20 years, quarter of a million dollar fine.  And all these have
6   a five-year supervised release.  And the conspiracy is that you
7   and somebody else came to an understanding.  If you didn't
8   start it, you joined it after somebody else had an agreement.
9   You understood what the agreement was; that it was illegal.
10  And you voluntarily, not by accident or mistake, joined it,
11  intending to help carry out the illegal purpose, and that
12  somebody who was a party to the agreement actually did
13  something to carry it out, some material act.  So they can't
14  charge you with conspiring if you just sat around and talked
15  about it at Denny's.
16      Any questions about that?
17      THE DEFENDANT:  No, sir.
18      THE COURT:  Punishment is up to five years, quarter of
19  a million dollar fine, three years of supervised release.  This
20  is the scary part, Mr. McDaniels.  I can sentence you to 45
21  years in prison, a million dollars, four times a quarter of a
22  million is a million, and 18 years of supervised release.
23      MS. ZACK:  Your Honor, it is actually life on
24  supervised release.  The other three, other than conspiracy,
25  are minimum of five up to life.

1    THE COURT: Okay. So three life supervised release,
2  plus three years. The last three years is going to be the hard
3  part. If you were a World Trade bomber, you wouldn't get life
4  supervised release.
5    MS. ZACK: I didn't write it.
6    THE COURT: Are you sure?
7    MS. ZACK: I'm sure. That was Congress.
8    THE COURT: Well, that's bizarre sentencing
9  priorities. If some guy from Boston was the guy who really
10 shot the Ambassador in Libya, he couldn't get life supervised
11 release and probably wouldn't get 20 years. Anyway, that's
12 what you are facing.
13      Any questions about the whole range of
14 punishment?
15   THE DEFENDANT: No, sir.
16   THE COURT: Do you understand supervised release?
17   THE DEFENDANT: Yes, sir.
18   THE COURT: It is like being on parole or probation
19 when you are not serving time.
20   THE DEFENDANT: Yes.
21   THE COURT: Has anyone threatened or forced you to
22 plead guilty?
23   THE DEFENDANT: No, sir.
24   THE COURT: I understand that you made a deal with the
25 government. Is that right?

1    THE DEFENDANT:  Yes, sir.
2    THE COURT:  And as I understand it, you are going to
3 plead guilty to these four counts, give up your right to
4 appeal, directly or indirectly.  In exchange for that, the
5 United States -- I don't know why you're anticipating a
6 request --
7    MS. ZACK:  I'm sorry?
8    THE COURT:  An anticipated request to probation --
9    MS. ZACK:  By the defendant.  Not by me.
10   THE COURT:  I know.  But he is going to ask me.  He is
11 not going to ask the probation officers.
12   MS. ZACK:  It wouldn't really have any effect so --
13   THE COURT:  I understand that, but you wrote it.  You
14 handed me this thing.  It has all the same mistakes as the
15 other thing.
16          The United States says that it won't oppose any
17 request for an adjustment and all this guideline business and
18 will dismiss all the remaining counts and will not charge you
19 with anything else that it knows now.  Is that right?
20   MS. ZACK:  That's correct, as to this case.
21   THE COURT:  As to this nucleus of activity.  What is
22 the other case?
23   MS. ZACK:  He has another pending case before Judge
24 Rosenthal.
25   THE COURT:  About what?

1       *MS. ZACK:* Witness tampering.

2       *THE COURT:* I'm not asking you if you did, but if
3  somebody asks you to do that, don't do it.

4       It is not related to this case, is it?

5       *MS. ZACK:* Yes.

6       *THE COURT:* To this case?

7       *MS. ZACK:* Yes.

8       *THE COURT:* So it's related to this case. But other
9  than that, the government is not -- no government, the United
10 States is not going to charge you with anything it knows about.
11 Whatever else was going on, they probably had some unlicensed
12 chicken feathers or something somewhere along that line.

13      None of this other stuff that you did about this
14 apparent prostitution business are they going to charge you
15 with, other than what is before Judge Rosenthal, and that's
16 all. For the fact of the matter, that's all they are agreeing
17 to do, to dismiss what they did charge you with arising out of
18 this and not charge you with anything else.

19      Any questions about your deal?

20      *THE DEFENDANT:* No, sir.

21      *THE COURT:* Has it been signed?

22      *MS. ZACK:* I have the -- Your Honor, I don't know if
23 the sentence data sheet reflects that the agreement is 96
24 months in custody followed by 15 years of supervised release.
25 No fine.

1    MR. MAYS:  Actually, the plea agreement has 96 months
2  of custody, but there is nothing about the 15 years of
3  supervised release.
4    THE COURT:  It's not in the agreement?  How useful is
5  this?
6    MS. ZACK:  We have been making a lot of adjustments.
7  I apologize.  I can handwrite it on this and send you a fresh
8  copy when I get back to the office.
9    THE COURT:  The plea agreement?
10   MS. ZACK:  Yes, of the plea agreement.  Just that page
11  and he can initial it.
12   THE COURT:  No.  Put the right facts in there.  He
13  will sign it.  You will sign it and we will file it.  Used to,
14  all court documents were handwritten.  I was a judge before
15  they had typewriters.
16   MS. ZACK:  We are going to leave the term of
17  supervised release up to the Court to be determined at
18  sentencing.  Now there's a blue spot on here.
19   THE COURT:  That's all right.  We need to get it done.
20      (Off the record discussion held)
21   THE COURT:  Mr. McDaniels, my court reporter is aging
22  rapidly and she didn't understand your middle name.
23   THE DEFENDANT:  Boyd.
24   MS. ZACK:  B-O-Y-D.
25   THE COURT REPORTER:  B-O-Y-D?

1    *MS. ZACK:*  Uh-huh.
2    *THE COURT REPORTER:*  Thank you.
3    *THE COURT:*  Other than that written agreement,
4  Mr. McDaniels, is there anything that has been promised you by
5  anybody --
6    *THE DEFENDANT:*  No, sir.
7    *THE COURT:*  -- to get you to plead guilty.
8         Now, do you understand that all of those deals
9  and agreements are subject to what I do?
10   *THE DEFENDANT:*  Yes, sir.
11   *THE COURT:*  And you can't change your mind after
12 today.  You are stuck with me.  You are giving up your right to
13 appeal so you are stuck with me.
14   *THE DEFENDANT:*  I understand.
15   *THE COURT:*  My children found that scary.
16   *MR. MAYS:*  Your Honor, if I may, I do want to put one
17 other thing on the record.
18   *THE COURT:*  Speak up.
19   *MR. MAYS:*  With respect to --
20   *THE COURT:*  Speak up so that the court reporter can
21 hear you.
22   *MR. MAYS:*  Last week, we were set to do this change of
23 plea, rearraignment, and I postponed it for a week because of
24 the pending case that is before Judge Rosenthal that is related
25 to this case so that I could consider whether or not his

1  pleading guilty to these four counts would impact or affect
2  what is pending before Judge Rosenthal.  I have done that and I
3  have advised Mr. McDaniels that I don't believe his plea of
4  guilty in this case to these four counts will affect either his
5  statutory range of punishment or his guideline calculations for
6  the tampering charges that are pending before Judge Rosenthal
7  and so he is going forward with this plea today, relying on the
8  advice that I have given him with respect to this not impacting
9  his statutory range of punishment or his sentencing guideline
10 calculation.
    
11             *THE COURT:*  Are you involved in that case?
12             *MS. ZACK:*  No, Your Honor.
13             *THE COURT:*  Who is doing it?
14             *MS. ZACK:*  It is Craig Feazel and John Jocher.
15             *MR. MAYS:*  And I have spoken with Mr. Jocher and he
16 concurred with me about it not impacting his statutory --
17             *THE COURT:*  He can confer in writing.
18             *MR. MAYS:*  Or the sentencing guideline range.
19             *MS. ZACK:*  Mr. McDaniels has a different attorney on
20 that case also and he has been consulted, as well.  He is not
21 represented by Mr. Mays in that case.
22             *THE COURT:*  Mr. Jocher needs to make that commitment
23 in writing so he can sleep at night, if it's possible, in the
24 jail.  The government is representing --
25             *MS. ZACK:*  I'm sure Mr. Jocher -- there is not a

1  doubt --

2  THE COURT: Normally these folks conspire with you --

3  MS. ZACK: No. I can pass that on to him.

4  THE COURT: Tell him to get it to whoever that lawyer
5  is, immediately, in writing, with no equivocations.

6  Look, he has got enough problems without worrying
7  about Mr. Jocher going off somewhere and having Mr. Magliolo be
8  the prosecutor to that charge. He's a nice prosecutor. You
9  can't rely on this either, but I think that's what the answer
10 should be, but I do not intend that to be in any way a
11 suggestion of what Judge Rosenthal thinks.

12 In the plea agreement, there is a lot of text
13 about what you are admitting that you did. There is avoiding
14 arrest discussions and -- did you read all this?

15 MS. ZACK: Yes, Your Honor.

16 THE COURT: Not you, him.

17 THE DEFENDANT: Yes, sir.

18 THE COURT: Lenexa has had a fairly bureaucratic
19 abstract probe except for a couple facts.

20 Have you read through all of that stuff?

21 THE DEFENDANT: Your Honor --

22 THE COURT: Speak up.

23 THE DEFENDANT: I'm from Kansas City and Lenexa is
24 like the little place over from Kansas City, so me going to
25 Kansas, that's where I'm from. I'm not originally from Texas.

1  THE COURT:  But you went from Houston to Kansas City?
2  THE DEFENDANT:  Yes.
3  THE COURT:  I assume there is no international airport
4  in Lenexa?
5  THE DEFENDANT:  No.
6  THE COURT:  And are you from Kansas City, Kansas or
7  Missouri?
8  THE DEFENDANT:  I'm from Kansas.
9  THE COURT:  The point is that the prostitute was
10  transported in interstate commerce and you helped secure the
11  transportation.
12  THE DEFENDANT:  Yes, sir.
13  THE COURT:  Once indicted there is a law that makes it
14  a federal crime to transport women in interstate commerce for
15  immoral purposes.  And they indicted a mobster once for taking
16  his mistress to Yellowstone.  They didn't indict him for that
17  trip, because that was for recreation, but when he took her
18  back to Brooklyn, they said he was taking her back for her to
19  be his mistress and therefore that violated the Mann Act.  It
20  was a long time ago, but it was still extraordinarily stupid.
21      Other than that, do you disagree with anything in
22  the recitation?
23  THE DEFENDANT:  No, sir.
24  THE COURT:  I find that there are facts to support
25  your having pleaded guilty and I accept your plea and adjudge

1  you guilty as charged in the two transporting, one enticing and
2  one conspiracy charge, regardless of their numbers.
3             The sentencing is set for December 17th, 2012 at
4  1:30.
5             What's wrong with December 17th?
6        *MS. ZACK:*  I'm probably not going to be in town, but I
7  will make sure --
8        *THE COURT:*  The 24th?
9        *MS. ZACK:*  Then I will definitely be in town, but I
10 wouldn't want to do that to anyone who is preparing for
11 Christmas.
12       *THE COURT:*  It's a work day.
13       *MS. ZACK:*  It is.
14       *THE COURT:*  The people of America are paying you to
15 work.
16       *MS. ZACK:*  Oh, I plan on working.  It's not my
17 holiday.
18       *THE COURT:*  December 17th is actually a wonderful day.
19       *MS. ZACK:*  It's a Monday.
20       *THE COURT:*  It is.  It will be the thirty-fourth
21 anniversary of my appointment to the state bench and my
22 twenty-eighth -- not cumulative.  I was appointed to the state
23 bench and federal bench on the same day of the year, purely by
24 coincidence.
25       *MS. ZACK:*  That is probably very rare that that

1  happens on the same day.

2              THE COURT:   One out of 108 chance.

3              MS. ZACK:   Three hundred sixty-four.

4              THE COURT:   Anyway, I should buy a lottery ticket or
5  send the government a dollar.  That's more efficient.

6              MS. ZACK:   No.  Thank you.

7              THE COURT:   Do you want to do it sooner?

8              MS. ZACK:   Yeah.  I mean, we certainly could probably
9  do it sooner.  What I would like to do actually if we could is
10 not have a date until -- I believe that the majority of the
11 codefendants are also going to be entering pleas before the
12 Court, and I have discussed that with Glenda and with those
13 attorneys, so if we could do it all on the same day, that might
14 be more economical.

15             THE COURT:   I will leave it set.

16             MS. ZACK:   Then we can adjust.

17             THE COURT:   Then we can work around it.  I like backup
18 dates.

19             MS. ZACK:   Absolutely.

20             THE COURT:   Backup memories, things like that, are not
21 very reliable.

22             MS. ZACK:   This is perfect, but the Court is open to
23 changing it once we get everyone on board?

24             THE COURT:   Then I will have one or two probation
25 officers do all the reports at one time, work together instead

1  of parallel.
2              Mr. McDaniels, do you have any questions?
3         THE DEFENDANT:  No, Your Honor.
4         THE COURT:  We will see you in December, or whenever
5  it happens.  If you have any questions in the meantime -- and I
6  recognize -- you don't have to talk to the probation officer,
7  but I think it helps.  Almost everything I know is going to
8  come from that very long report about you and about what you
9  did, didn't do and all of that.  But if you have any questions
10 about anything, talk to Mr. Mays first.
11             Mr. Mays, anything else?
12        MR. MAYS:  Nothing, Your Honor.
13        THE COURT:  Ms. Zack?
14        MS. ZACK:  Your Honor, I had discussed with Glenda
15 that the internal deadline that y'all set for the jury
16 instructions is Monday, but as the defendants are starting to
17 plea, it is going to change what counts jury instructions
18 actually have to be removed or changed.
19             What I'm asking is if you could just allow us to
20 have until the date that you have set for the witness, exhibit
21 list deadline for the jury instructions because I think we will
22 have everybody by then set for a plea, or know who isn't going
23 to plea.
24        THE COURT:  All right.  I don't know whether they
25 agreed --

1    *MS. ZACK:*  I don't think they have a problem.  I have
2  been speaking with everybody on a daily basis, Your Honor.
3    *THE COURT:*  Mr. McDaniels, we just spent 30 minutes
4  for her working up the motion to postpone some work.  This is
5  all smoke for her not wanting to do what I told her to do.
6    *MS. ZACK:*  No.  It's getting there, Judge.  It's
7  getting there.  We're good.
8    *THE COURT:*  Glenda, send out an order so they all
9  know.
10            Anything else?
11    *MS. ZACK:*  No, Your Honor.
12    *MR. MAYS:*  No, Your Honor.
13    *THE COURT:*  Thank you.
14    *(Proceedings concluded at 3:01 p.m.)*
15                    * * * *
       I certify that the foregoing is a correct transcript from
16  the record of proceedings in the above-entitled cause.
17  Date: February 19, 2013, 2013
18
                       /s/ *Mayra Malone*
19                     ---------------------------------------
                       Mayra Malone, CSR, RMR, CRR
20                     Official Court Reporter
21
22
23
24
25

                   Mayra Malone, CSR, RMR, CRR
                   mayramalone@comcast.net